SWINGLEY, RESPONDENT, *v.* RIECHOFF, APPELLANT.

(No. 8,140.)

(Submitted March 18, 1941. Decided April 30, 1941.)

[112 Pac. (2d) 1075.]

 

 

*Mr. Bert I. Packer,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. John W. Coburn* and *Mr. Wilbur P. Werner,* for Respondent, submitted a brief; *Mr. Coburn* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to quiet title to land in Glacier county. The complaint is a short form appropriate to such an action and appears to be sufficient so far as the party named as defendant is concerned. A general demurrer to the complaint was overruled and the defendant given twenty days in which to plead further. The answer consists of, first, a general denial; second, title in the defendant by adverse possession; and, third, a cross-complaint by which it is alleged that the defendant loaned to plaintiff $600 on a promissory note and $1,500 additional on another promissory note, both notes dated May 23, 1919, due May 23, 1929, with interest at six per cent until maturity and thereafter at ten per cent per annum, both of which notes were secured upon lands belonging to the plaintiff and described in her complaint; and the defendant further sets out in his cross-complaint taxes paid upon the land each year after the mortgage was given until November 30, 1936, in the aggregate sum of $577.01.

It is alleged that no payments of either interest or upon the principal were made at any time after the notes and mortgages were executed and delivered to the defendant. Copies of the

mortgages appear as exhibits to the complaint and by reference are made a part thereof.

The reply admits the execution and delivery of the notes and mortgages, but alleges that the notes are barred by the provisions of section 9029, Revised Codes, by section 8264 and section 8267. This same defense is advanced against the different causes of action set up in the defendant's cross-complaint, and is also made a defense against that part of the cross-complaint praying for reimbursement for the taxes paid on the mortgaged land with interest thereon.

The cause was tried by the court sitting without a jury. The judgment was granted to the plaintiff as prayed for in her complaint, and she was likewise awarded costs in the amount of $13.60. The appeal is from the judgment.

The plaintiff, when called as a witness for the defendant, identified and admitted her signature to the two notes and mortgages and the coupons attached to the notes, and it appears by her testimony and that of others that she had never paid anything on either of the notes nor had ever paid any taxes on the land. She admitted that the taxes had been paid, but testified that she did not know who paid them.

The evidence fails to support defendant's allegation that he was in undisputed possession of the mortgaged premises for a period of ten years or more or at any time. On the contrary, the evidence strongly supports plaintiff's contention that she had been in the possession at all times either personally or by tenants from whom she collected rent.

Defendant admits in his brief that "the debt is undoubtedly outlawed and the mortgage liens were never extended by affidavit." In view of this admission, we think that it is not necessary to take up the question of law as to whether the mortgages are barred by the statute of limitations or not.

As to the matter of the taxes paid by the plaintiff on the mortgaged premises, a different question is presented. If the defendant had not paid the taxes, undoubtedly the county would have taken tax deed to the premises unless the plaintiff herself,

or some other person for her other than the mortgagee, had paid the taxes. And it is our view that it would be an unconscionable violation of every principle of equity to hold that the plaintiff might have her title to the mortgaged lands freed from the cloud on the title occasioned by the outlawed mortgages without at least paying the taxes that saved the forfeiture of her lands to the county for such delinquency.

In the case of *Tracy* v. *Wheeler,* 15 N. D. 248, 107 N. W. 68, 6 L. R. A. (n. s.) 516, where the plaintiff brought an action to remove a cloud from his title, admitted in his complaint the making, executing and delivery of a mortgage to the defendant and the recording thereof, and alleging that such mortgage constituted a cloud upon the title to his land and praying the court that such mortgage be adjudged null and void and his title quieted, the court used this language: "The majority of this court has reached the conclusion, upon a rehearing, that the plaintiff must fail. Equity and good conscience require that she should pay the debt secured by the mortgage as a condition to its cancellation. The maxim that 'he who seeks equity must do equity' voices a just and universal rule in determining the equitable rights of suitors, and should always be applied in cases like this. The action, even if treated strictly as a statutory action to determine adverse claims, is equitable (6 Pomeroy's Equity Jurisprudence, sec. 735), and is governed by equitable principles. The plaintiffs seek equity. They must do equity. Every man should pay his just debts. It is right that he should do so. The fact that he may not be coerced to discharge them by legal means affects only the legal character of his obligation. It does not alter the primary fact that he owes an obligation which in equity and good conscience he should pay. The supreme court of California, in applying this principle in a similar case (*Booth* v. *Hoskins,* 75 Cal. [271] 276, 17 Pac. [225] 227), said: 'Common honesty requires a debtor to pay his just debts if he is able to do so, and courts, when called upon, always enforce such payments if they can. The fact that a debt is barred by the statute of limitations in no way releases the debtor from his moral obli-

gation to pay it. Moreover, one of the maxims which courts of equity should always act upon is, as suggested by the court below, that "he who seeks equity must do equity." ' In accordance with this rule, it was held, that, 'where a mortgagor of land seeks to quiet title as against the mortgage deed, he will be required to pay the mortgage debt, regardless of whether or not the debt is barred by the statute of limitations.' "

That case was decided in April, 1906, but its principles are as sound and just today as they were at the time the opinion was rendered. The rules there laid down, however, have been modified to some extent largely due to new statutes enacted relative to the life of real estate mortgages. And in Montana section 8267, Revised Codes, makes it necessary to modify some of the old fundamental principles of equity in dealing with the lien of real estate mortgages. We do not think, however, that for the reasons which will hereafter be stated, the rule we are obliged to follow by reason of section 8267, limiting the life of a mortgage, should be applied to relieve the mortgagor of the obligation to repay to the mortgagee taxes paid by the latter on the mortgaged land, even though the mortgagee's lien on the land is barred by the statute of limitations. Many jurisdictions hold that if the mortgagee pays the taxes on the mortgaged lands and allows the mortgage lien to go by default, under the statute of limitations, any right to regain the taxes paid by recourse to any lien on the land or by action against the mortgagor, is lost when the mortgage ceases to be a lien against the land; other decisions are to the effect that the mortgagee having paid the taxes on the land, even where the statute of limitations has run against the lien of the mortgage, the mortgagee can still recover on the equitable principle of subrogation to the right of the county to enforce the tax lien against the land. In some cases it has been held that one who pays taxes for any reason upon the lands of another party has an equitable lien on the land for the amount so paid.

We think that we can best present these questions by quotations from particular cases. In an annotation in 61 A. L. R., on pages 602 to 604, we find these cases referred to:

"So, a junior mortgagee who has paid the taxes, penalty, and costs charged against the property, for the purpose of protecting his lien thereon, is entitled to be subrogated to the lien held by the state to secure the payment of the same, as such lien is paramount to all other liens, and should be first paid out of the proceeds of the sale of the property charged. (*Lester* v. *Richardson* (1901) 69 Ark. 198, 62 S. W. 62.)"

"It has been stated that subrogation really involves equitable principles, and does not stand upon contract, but is founded on principles of natural justice, and has frequently been applied to the payment of taxes made in good faith by one who deemed it necessary to protect a lien on the property against which the taxes were levied, although no lien existed in law. *Dunsmuir* v. *Port Angeles Gas, Water, E. L. & P. Co.*, (1902) 30 Wash. 586, 71 Pac. 9, holding that a person who, believing that he has a valid lien on personal property, in good faith pays taxes in order to protect his supposed lien, is entitled to be subrogated to the rights of the county to the extent of the taxes paid, but not to collect the penalties provided by statute."

"So, subrogation to the rights of the state in a foreclosure of a mortgage on his lands was granted to a person holding certificates of purchase as security for a note he had executed for the accommodation of the purchaser, the proceeds of which were applied to the payment upon the land, in *Griffith* v. *Lehman* (1903) 5 Neb. (Unof.) 22, 96 N. W. 991."

"See, also, *Pittsburgh* v. *O'Reilly* (1898) 7 Pa. Dist. R. 758, where a mortgagee who purchased the property on foreclosure, and was compelled to pay delinquent taxes not only upon the portion he purchased, but also upon other lands of the mortgagor, the city refusing to release its lien on any part of the mortgaged premises unless the tax on the whole was paid, was held entitled to subrogation."

"So, a mortgagee who pays taxes to protect the mortgaged property is subrogated to the tax lien upon the property, and

such lien is not subject to the operation of the Statute of Limitations, and the mortgagee is entitled to recover the tax payments, even though the mortgage be no longer enforceable. (*Catlin* v. *Mills* (1926) 140 Wash. 1, 247 Pac. 1013, 47 A. L. R. 545.)''

"Likewise, in *Childs* v. *Smith* (1910) 51 Wash. 457, 99 Pac. 304, 130 Am. St. Rep. 1107 (affirmed on rehearing in (1910) 58 Wash. 148, 107 Pac. 1053), a mortgagee whose mortgage was outlawed was held entitled to subrogation for taxes he had paid to protect his interest in the property, notwithstanding he could not enforce his mortgage, due to the bar of the Statute of Limitations.''

In 84 A. L. R., on pages 1371 and 1372, we find the following excerpts relative to the cases there mentioned:

"In *Aultman & T. Co.* v. *Jenkins* (1886) 19 Neb. 209, 27 N. W. 117, it was held that, where a mortgage was invalid for lack of proper execution, the mortgagee, having paid taxes and interest, had a lien thereon for such taxes and interest, enforceable on the land, if not paid by the mortgagors.''

"In *Hudson* v. *Moon* (1913) 42 Utah 377, 130 Pac. 774, it was held that, even where the consideration for the mortgage debt was illegal, being a gambling debt, and the plaintiff in the foreclosure was the original mortgagee, taxes paid by the mortgagee on the mortgaged property, for the use and benefit of the mortgagor, constituted a separate transaction, and the mortgagee could recover the amount thereof from the mortgagor in the foreclosure action.''

"The same court, in *Utah State Bldg. & L. Asso.* v. *Perkins* (1918) 53 Utah 474, 173 Pac. 950, where it appeared that deeds given as security were void because executed in blank only and filled in without proper authority, and these facts were known to the grantee, seeking to foreclose the lien, held that taxes and interest on a prior mortgage paid by the plaintiff, having been expended for the benefit of the grantor and of the property involved, were liens against the property conveyed.''

"A mortgagee who has paid taxes on the property for the protection of the mortgage may recover the amount from the mortgagor, although the mortgage may no longer be enforceable because of the Statute of Limitations. (*Childs* v. *Smith* (1910) 58 Wash. 148, 107 Pac. 1053; *Catlin* v. *Mills* (1926) 140 Wash. 1, 47 A. L. R. 545, 247 Pac. 1013.) "

And in 123 A. L. R., in the supplemental annotation to 84 A. L. R., we find the following beginning on page 1252:

"In accord with cases cited in the earlier annotation is *Federal Land Bank* v. *Newsom* (1935) 175 Miss. 114, 161 So. 864 (affirmed on suggestion of error in (1936) 175 Miss. 131, 166 So. 345), in which the court, although recognizing that there was authority to the contrary, stated that it preferred the rule that where a mortgagee pays taxes on the mortgaged property to prevent a forfeiture to the state or to an individual tax purchaser, he will be subrogated to the lien of the state or municipality, although the lien for the protection of which such mortgagee paid the taxes turns out to be an invalid one. In this instance, one who granted a loan and received a deed of trust upon land in the belief that the mortgagor was the owner of a fee simple title, whereas he only held a life estate, his children having the remainder interest therein, and who, subsequent to the death of the mortgagor, redeemed from a tax sale of the land and paid other delinquent taxes, was held to be subrogated to the lien of the state as against the remaindermen who had become the owners of the fee at the time of the tax sale.

"Again, in *Farmers & M. Bank* v. *Rushing* (1936) 175 Miss. 826, 167 So. 784, where a bank which received a deed of trust from a husband upon land constituting a homestead (the wife not joining in said deed) subsequently foreclosed, and upon the sale of the land received a commissioner's deed which the wife thereafter sought to have canceled as a cloud upon the title to the homestead, it was held that the bank having shown that it had paid out certain sums for the redemption of the land from tax sales for state and county taxes, as well as for the payment of taxes, was entitled to be subrogated to the lien of the state and county in respect to such payments. (Citing *Federal Land*

*Bank* v. *Newsom* (1935) 175 Miss. 114, 161 So. 864, 867, affirmed on suggestion of error in (1936), 175 Miss. 131, 166 So. 345).

"And it was held in *Acklin* v. *First Nat. Bank* (1934) 64 N. D. 577, 254 N. W. 769, that although a mortgage was void, there being a failure to comply with the statutory requirements relating to encumbering a homestead, the mortgagee who had paid taxes upon the premises was entitled to a lien thereon to insure reimbursement for the amount thus paid, in accordance with the rule of subrogation.

"In *Fest* v. *Williams* (1935; Tex. Civ. App.) 89 S. W. (2d) 1072, where a constitutional provision prohibited the forced sale of a family homestead, making an exception, however, in the case of taxes, for which the taxing power has a lien upon the property, and where a mortgage was placed upon property actually used as a homestead, and the mortgagee, at the request of the owners, paid certain state, county and district taxes thereon, the amounts so paid being included in the amount secured by the deed of trust, which expressly provided that the lien should include tax items, it was held, notwithstanding the contention that the interests claimed by the mortgagee and his assignee were derived from a void deed of trust upon the mortgagors' homestead, that the deed of trust was valid to the extent of the tax items, that the mortgagee obtained a valid lien upon the homestead to the amount of the taxes paid, and that a sale by the trustee under the power given in the deed of trust was authorized and valid."

In addition to the above authorities, it is said in regard to subrogation, in the case of *McKenzie* v. *Evans,* 96 Mont. 1, 13, 29 Pac. (2d) 657, 662: "Although there is some doubt cast upon the proposition in early cases, it appears to be now well settled that there is nothing in the nature of a lien for taxes, or in the fact that such lien exists in favor of the sovereign taxing power, to prevent the application of the equitable doctrine of subrogation in a case where subrogation would otherwise be proper. (*Camden* v. *Fink Coal & Coke Co.,* 106 W. Va. 312, 145 S. E. 575, 61 A. L. R. 584, and cases cited in note, page 587.)"

It is very seldom that one finds as great a variety of views and conclusions as in the questions involved in this action. And good authority can be found contrary to the holding we will make here. But we think that this court should not lend its offices to clear the title to the property of any litigant where it is frankly admitted that taxes have been paid by another without directing that such taxes be repaid to the party paying the same—in this instance, to the defendant.

We have proceeded thus far on the presumption that when the defendant paid the taxes he, as the subrogee of the county and state as to the lien against the land, acquired all the rights of the county and state, except the rights to impose penalties for delinquency. (*Dunsmuir* v. *Port Angeles Gas, Water, etc., Co.,* supra.) The presumption is based upon the following authorities: The government's lien for taxes is based upon express statutory provision, and is a perpetual lien against which no statute of limitations can successfully be interposed. (Secs. 2152 and 2154, Rev. Codes.) Section 2152 provides: ''Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all personal property of the delinquent. The judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof.'' A perpetual lien, of course, presupposes a continuance of the obligation of a property owner to pay the tax or otherwise satisfy the lien without reference to the lapse of time. (*Calkins* v. *Smith,* 106 Mont. 453, 78 Pac. (2d) 74; *City of Port Townsend* v. *Eisenbeis,* 28 Wash. 533, 68 Pac. 1045, 1050.)

The mortgagee paid the taxes which should have been paid by the mortgagor, and which if unpaid were a perpetual lien against plaintiff's land. Payment of the taxes kept the property from going to tax deed; it was but a normal way for the mortgagee to protect his security. He failed in that purpose, but in attempting to save himself from loss he preserved plaintiff's title from forfeiture. It might be said that the mortgagee was negligent in not availing himself of the provisions of sec-

tion 8267 to keep the mortgage lien alive, but the statutes of limitation are statutes of repose and do not outlaw a mortgage lien until pleaded as a defense, and defendant may have believed plaintiff would not set up such defense out of appreciation of his having preserved the title.

With reference to such statutes as ours making the lien for taxes perpetual, it is said in 25 R. C. L., section 77, page 1394: " * * * but where by statute taxes assessed upon real estate are a lien thereon till paid, and the taxpayer cannot successfully interpose a plea of the statute of limitations against the state and county if they still held the tax lien and were seeking to enforce the same, *such a plea cannot be interposed against a subrogee holding the rights of the county and state by way of subrogation.*"

In support of this statement, it is said in *Childs* v. *Smith,* 51 Wash. 457, 99 Pac. 304, 305, 130 Am. St. Rep. 1107: "When appellant made the payments he was equitably subrogated to the rights and liens held by the county and state. Respondents did not make the payments, and they could not successfully interpose a plea of the statute of limitations against the state or county, if they still held the tax liens and were seeking to enforce the same. (*Port Townsend* v. *Eisenbeis,* 28 Wash. 533, 68 Pac. 1045; *Denman* v. *Steinbach,* 29 Wash. 179, 69 Pac. 751.) Section 1740, Ballinger's Ann. Codes & St. (sec. 8678, Pierce's Code), provides that taxes assessed upon real estate shall, after levy, be a lien thereon until paid. Had no payment of these general taxes been made by the appellant, and had there been no tax foreclosure, the lien would still exist in favor of the county and state, and respondents' property would still be subject thereto. It would be inequitable and a manifest injustice to permit the respondents to now secure a release of their property from the lien held by the appellant by a plea of the statute of limitations. To avoid such a miscarriage of justice, the appellant should be equitably subrogated to all the rights and liens of the county and state."

We hold that before a decree quieting title to the lands involved can be made in behalf of the plaintiff, she must pay the

taxes that are shown to have been paid by the defendant with interest thereon at six per cent.

Each party shall pay his own costs on this appeal.

The cause is remanded with instructions to the trial court to modify the judgment in accordance with this opinion, and as so modified it will stand affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ANDERSON concur.