No. 05-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 133

_____

MONTANA PETROLEUM TANK RELEASE
COMPENSATION BOARD,

        Plaintiff and Appellant,

   v.

CAPITOL INDEMNITY COMPANY, CONTINENTAL
INSURANCE COMPANY and DOES 1-25,

        Defendants and Respondents.

_____

APPEAL FROM:    District Court of the First Judicial District,
                    In and for the County of  Lewis and Clark, Cause No. BDV-2001-457
                    The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                R. Allan Payne, Doney Crowley Bloomquist Payne Uda, P.C., Helena,
                Montana

        For Respondent Capitol Indemnity Company:

                Mark A. Vucurovich, Henningsen, Vucurovich & Richardson, P.C., Butte,
                Montana

        For Respondent Continental Insurance Company:

                Maxon R. Davis, Davis, Hatley, Hafferman & Tighe, P.C., Great Falls,
                Montana

_____

                       Submitted on Briefs:  January 18, 2006
                                Decided:  June 13, 2006

Filed:

_____
                         Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    The Montana Petroleum Tank Release Compensation Board (Board) appeals from an order of the First Judicial District Court, Lewis and Clark County, granting Defendants' motions for summary judgment and dismissing all claims.  We affirm.

¶2    This dispute involves a gas station in Butte, owned and operated by Community Mutual Gasoline Co. (Community Mutual) from 1931 to 1984.  Community Mutual was insured by Defendant Capitol Indemnity Co. (Capitol).  Capitol issued general commercial liability policies to Community Mutual for approximately seven years, from August 1978 to August 1985.

¶3    In February 1984, Community Mutual leased the station to Leonard Simon and Randy Keller.  Simon and Keller ran the gas station through a corporation called Barter Gas and Salvage (Barter Gas).  Simon and Keller had a falling out and Simon ran Barter Gas without Keller, until it closed in 1986.  Barter Gas purchased a general commercial liability insurance policy from the second named Defendant, Continental Insurance Co. (Continental).

¶4    Three years after Barter Gas went out of business, in 1989, Community Mutual discovered a hole in one of its underground storage tanks at the gas station.  Community Mutual notified the Department of Environmental Quality (DEQ) of the leak.  Initial excavation of the area indicated that the subsurface soil surrounding the tank had been contaminated with gasoline.[1]

---

[1] The exact cause of the contamination has not been determined.  It was most likely the result of several independent factors, including the underground storage tank leak.  Also, in November of 1984, approximately 400 gallons of gasoline overflowed from an above

¶5    In September 1989 the DEQ ordered Community Mutual to clean up the soil that had been contaminated.  The DEQ also advised Community Mutual that the Montana Petroleum Tank Release Cleanup Fund was available to reimburse it for eligible expenses, as determined by the Board, resulting from the remediation of the property.[2] Community Mutual hired a consulting firm to work on cleaning up the contaminated groundwater and soil.  After complying with the DEQ's cleanup requirements, Community Mutual was eventually reimbursed by the Board in the amount of $254,842.

¶6    At no time did Community Mutual inform its insurer, Capitol, of the contamination or of the DEQ mandate to clean up the spilled petroleum.  Nor did Community Mutual ever inform Capitol it was expending money on the project.

¶7    Capitol received its first notice of these claims on April 5, 2001, when the Board submitted a claim for reimbursement of the $254,842 it had paid Community Mutual. Capitol denied the Board's claim.

¶8    Barter Gas and its insurer Continental were not notified of the cleanup until July 2001, when the Board filed this suit against Continental and Capitol.

¶9    The District Court granted summary judgment to Capitol, concluding that a "no action" clause in the policy issued to Community Mutual barred any action against it.

---

ground storage tank.  This gasoline was washed away by the local fire department, but some of the gasoline did permeate the soil and groundwater around the station.  In addition, the gas station had been in operation since 1931, therefore it is inevitable that small amounts of gasoline were spilt on the ground over the years.

[2] It is the Board's responsibility to administer the Petroleum Tank Release Cleanup Fund established by § 75-11-313, MCA.  The Board reimburses qualified owners and operators of petroleum storage tanks for certain environmental cleanup costs.

¶10 The District Court also granted summary judgment to Continental, concluding that because Community Mutual was not an insured party under the policy between Barter Gas and Continental, the Board had no right to recovery under the Continental policy.

¶11 The Board appeals both conclusions of the District Court.

¶12 This Court reviews a district court's grant of summary judgment *de novo*. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 18, 321 Mont. 99, ¶ 18, 90 P.3d 381, ¶ 18. We apply the criteria contained in Rule 56, M.R.Civ.P. According to this rule, the moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, ¶ 14, 119 P.3d 47, ¶ 14. The burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. *Grimsrud*, ¶ 14. If the court determines that no genuine issues of fact exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. *Grimsrud*, ¶ 14. We review legal determinations made by a district court to establish whether the conclusions are correct. *Grimsrud*, ¶ 14.

### *Claims Against Capitol Indemnity Co.*

¶13 The District Court concluded that a "no action" clause in the policy between Capitol and Community Mutual barred any recovery by the Board. This no action clause was included in the 1983-1984 policy between Capitol and Community Mutual, which in effect, provided that Capitol cannot be required to pay any claimed loss unless the claim against the insured is tried in court, or the claimant, the insured, and Capitol all agreed to a settlement.

4

¶14 The Board contends that Capitol should be barred from asserting its no action clause defense because such a defense was not articulated in Capitol's letter denying the Board's claim for reimbursement. Under Montana's Unfair Trade Practices Act, an insurer has an obligation to inform the "insured" of all policy defenses it intends to rely upon. *Portal Pipe Line Co. v. Stonewall Insurance Co.* (1993), 256 Mont. 211, 217, 845 P.2d 746, 750 (citing § 33-18-201(14), MCA). We conclude, however, that the Board's argument is inapposite. Even if the Board is correct that § 33-18-201(14), MCA, would have required Capitol to disclose all possible defenses in its denial letter to the Board, Capitol would still be permitted to assert its statute of limitations defense, as such was included in the denial letter.

¶15 Assuming *arguendo* that the Board would otherwise have a claim against Capitol, through subrogation of Community Mutual's rights, then, as the Board recognizes in its brief, it would stand in the shoes of Community Mutual. *See DeTienne v. Farmers Union Mut. Ins. Co.* (1994), 266 Mont. 184, 189, 879 P.2d 704, 707-08. Any defenses Capitol has against Community Mutual may thus be asserted against the Board. *See* 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 234:67 (3d ed. 2005) ("Since a subrog[ee] . . . stands in the shoes of an insured, it is subject to the same defenses as could be asserted against its insured, including a statute of limitations[.]") (footnote omitted).

¶16 The District Court did not address Capitol's statute of limitations defense in its final order, however, this defense was included in Capitol's answer to the Board's

original complaint and has been argued throughout the briefing in this matter.[3]   Further, if we reach the same conclusion as the district court, but on different grounds, we may nonetheless affirm the district court's judgment.  *Safeco Ins. Co. of America v. Liss*, 2000 MT 380, ¶ 25, 303 Mont. 519, ¶ 25, 16 P.3d 399, ¶ 25.

¶17    A period of limitations begins to run from the time the claim for relief accrues. Section 27-2-102(2), MCA.  Capitol claims that the limitations period began to run when Community Mutual could have first filed a claim with its insurer, Capitol, for payment of the cleanup costs.  Capitol argues that such date occurred no later than 1989, when Community Mutual began paying for the cleanup.  Conversely, the Board claims that the limitations period could not have began to run until July 2001, when Capitol denied the Board's claim for reimbursement of the amount it paid Community Mutual.

¶18    We conclude that the limitations period began to run when all the elements accrued for Community Mutual to file a claim with Capitol.  This was sometime in 1989. To conclude otherwise would "effectively nullify the purpose of any statute of limitations."  *See Nelson v. Twin Bridges High School* (1979), 181 Mont. 318, 321, 593 P.2d 722, 724.  As we concluded in *Nelson*, in an insurance setting, if the statute of limitations did not begin to run until the plaintiff's claim had been denied, "[t]here would be no limitation on when the claim could be filed.  The [defendant] could be sued at any

---

[3] Prior to filing its answer, the Board's motion to dismiss was denied by the District Court.  In its motion to dismiss, Capitol argued that the Board's claim fell outside the two-year statutory limitation for filing a property damage tort claim. Section 27-2-207, MCA.

time in the future at the option of the plaintiff, simply by delaying presentation of a claim[.]" *See Nelson*, 181 Mont. at 321, 593 P.2d at 724.[4]

¶19 The longest possible period of limitations that could be applicable is eight years. Section 27-2-202(1), MCA. This is well short of the approximately twelve years that passed before the Board made its claim against Capitol. We therefore conclude Capitol is correct that any claim the Board may have had against it was barred by the statute of limitations.

### *Claims Against Continental Insurance Co.*

¶20 Although no policy was located, the District Court found that Continental had issued a commercial liability policy to Barter Gas. Evidence that a policy was issued included a notice of cancellation sent from Continental to Community Mutual in 1985. This notice of cancellation indicated that Barter Gas was the "named insured" while Community Mutual was a "loss payee."

¶21 The status of Community Mutual is significant because the Board's claim is that it has a right to subrogation through Community Mutual to recover its payments from Continental. If Community Mutual was an insured party under the Continental policy, then the Board could have subrogation rights through Community Mutual. However, as explained below, if the Board was a loss payee, then the Board would have no right to

---

[4] As a practical matter, for the insured to bring an action for payment under an insurance policy, the insurer would first need to deny payment. Thus upon the submission of a claim by the insured party, the statute of limitations is tolled until the claim is denied by the insurer. 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 237:39 (3d ed. 2005).

subrogation. Therefore, we must first determine whether the District Court erred in its finding that Community Mutual was not an insured party under the Continental Policy.

¶22 The District Court found that Community Mutual was not an insured, but at best was a loss payee, because the only evidence introduced concerning Community Mutual's status was the notice of cancellation, which clearly identifies Community Mutual as a loss payee. The Board argues that the lease agreement between Community Mutual and Barter Gas[5] should also be considered as evidence that Community Mutual was an insured party under the policy and not a loss payee.

¶23 The lease agreement required Barter Gas to "insure [Community Mutual] against liability for injury to or death of persons or loss or damage to property occurring in or about the demised property." The Board argues that the lease agreement therefore required that Community Mutual be an insured party under the Continental policy. The Board further contends that because there may be a conflict between the lease agreement and the notice of cancellation, there is an issue of material fact regarding the terms of the policy and therefore summary judgment was improper.

¶24 In support of its argument the Board presented the report of Douglas E. Talley, an expert in insurance archaeology and policy reconstruction. Talley opined that Community Mutual was an insured party and not a loss payee. He based this opinion on the lease agreement and notice of termination discussed above. Talley also relied on the depositions of Randy Keller (co-owner of Barter Gas) and Jay Driscoll (employee of Community Mutual).

---

[5] The named parties to the lease were James Driscoll (president of Community Mutual) and Leonard Simon and Randy Keller (owners of Barter Gas).

8

¶25   Keller confirmed that Barter Gas carried liability insurance during the relevant period but he admitted to having no part in negotiating the lease or obtaining the insurance. Keller could only state that he would expect that Simon, who was responsible for running the business end of Barter Gas, would have obtained the necessary insurance. Thus, Keller's testimony is speculation at best and fails to support Talley's opinion that Community Mutual was an insured party.

¶26   The testimony of Jay Driscoll, who is the son of James and Audrey Driscoll,[6] also fails to support Talley's opinion. Although an employee of Community Mutual, Jay Driscoll had no involvement in the negotiation of the Barter Gas lease. When asked if his father would have included a provision that required the lessee to insure Community Mutual for liability, Jay Driscoll merely speculated that his father would have probably required the lessee to make Community Mutual an insured party. He also stated that he had no knowledge of whether Barter Gas had actually purchased a policy.

¶27   Further, the lease agreement and the testimony tell us nothing of the type of policy that was actually procured. The only direct evidence available is the notice of termination that was sent to Community Mutual, which clearly identifies Community Mutual as a "loss payee." Thus, Talley's opinion that Community Mutual was actually an insured party under the policy is based entirely on speculation. We have held that speculative statements by an expert are insufficient to raise a material issue of fact to defeat summary judgment. *Ike v. Jefferson Nat. Life Ins. Co.* (1994), 267 Mont. 396, 402, 884 P.2d 471, 475.

---

[6] James and Audrey Driscoll were the owners of Community Mutual.

¶28 We conclude that the District Court did not err when it found that Community Mutual was at most a loss payee under the Continental policy, and as a consequence, the Board had no right of subrogation through Community Mutual.

¶29 A loss payee is generally the party to whom money or insurance proceeds is to be paid in the event of a loss. *See e.g., Bartlett v. Allstate Ins. Co*. (1996), 280 Mont. 63, 929 P.2d 227. A loss payee is defined as:

> [A] mere appointee to receive the proceeds to the extent of his interest . . . dependant upon the existence of an insurable interest in such appointee . . . it makes the policy subject to any act or omission of the insured which might void, terminate, or adversely affect the coverage; and if the policy is not collectible by the insured, the appointee, likewise, cannot recover thereunder.

5A John A. Appleman & Jean Appleman, *Insurance Law and Practice*, § 3335 (1970) (footnotes omitted). Thus, the rights of a loss payee are derivative. Any defense Continental would have against Barter Gas would also bar recovery by Community Mutual.

¶30 Barter Gas had no right to collect any amount under the Continental policy as it had no part in funding the DEQ-ordered remediation project. Nor does it have any obligation to pay for any part of the remediation. Because Barter Gas is entitled to nothing under its policy with Continental, Community Mutual, as a loss payee, is also entitled to nothing from Continental.

¶31 A subrogated party can stand in no better position than the insured. *DeTienne*, 266 Mont. at 189, 879 P.2d at 707-08. Therefore, even if the Board could show it was the subrogee of Community Mutual, it would still have no right to recovery from Continental

10

because, as discussed in the preceding paragraph, Community Mutual had no rights to subrogate.

¶32 In the alternative, the Board argues that even if Community Mutual was not an insured party under the Continental policy, the Board still has a right of subrogation directly through Continental's named insured, Barter Gas. The District Court did not reach this issue.

¶33 Subrogation is an equitable adjustment of rights used to avoid unjust enrichment. In many instances this is accomplished by substituting one person or entity in place of another in regard to some claim or right the second person or entity has against a third party. *See e.g., Swingley v. Riechoff* (1941), 112 Mont. 59, 112 P.2d 1075. In an insurance context, a victim of loss who is compensated by her insurer is generally thought to have subrogated her rights to recover from a third party to her insurer. The Board in this case argues that, although it did not reimburse Barter Gas for expenses, it nonetheless relieved Barter Gas of its "liability" to clean up the property. Thus, the Board claims it should be subrogated to any right Barter Gas had to be indemnified by its insurer, Continental. The Board claims that this Court dealt with similar equities in *Swingley v. Riechoff* (1941), 112 Mont. 59, 112 P.2d 1075.

¶34 In *Swingley*, the mortgagor of a home, Ms. Swingley, defaulted on her note and mortgage to the mortgagee, Mr. Riechoff. *Swingley*, 112 Mont. at 60-61, 112 P.2d at 1076. Riechoff paid the property taxes on Swingley's home to protect his investment. *Swingley*, 112 Mont. at 61-62, 112 P.2d at 1076. The period of limitations to foreclose the mortgage ran, and Swingley sued to quiet her title to the mortgaged property.

*Swingley*, 112 Mont. at 60-61, 112 P.2d at 1076.  This Court decided that as a matter of equity it would be unconscionable to free the home from the cloud on the title created by the mortgage without reimbursing Riechoff the amount of the taxes he paid.  *Swingley*, 112 Mont. at 62, 112 P.2d at 1076.  This Court held that when Riechoff paid the taxes, the state effectively subrogated its right to collect that amount to him.  *Swingley*, 112 Mont. at 68, 112 P.2d at 1079.  Thus, Swingley was required to reimburse Riechoff for the taxes he paid, before the Court would quiet her title.  *Swingley*, 112 Mont. at 69-70, 112 P.2d at 1080.

¶35     Relying on *Swingley*, it is the Board's argument that Barter Gas had an obligation to pay for the cleanup, and the Board should therefore be subrogated to any claim Barter Gas had against Continental.  However, the flaws in the Board's argument are patent.

¶36     In *Swingley* the state clearly had the right to collect accrued property taxes from Swingley.  Thus, the state had an existing right to subrogate to Riechoff.  *Swingley*, 112 Mont. at 68, 112 P.2d at 1079.  In this case, Barter Gas was never involved in the remediation project, nor was it ordered by the DEQ to conduct any remediation.  There has been no showing that Barter Gas was liable for any remediation costs.  Thus, Barter Gas had no claim against Continental because it has never been ordered or even asked to pay an insured loss.  Because Barter Gas had no right to reimbursement from Continental, none can pass to the Board.  A subrogated party can stand in no better position than the insured.  *DeTienne*, 266 Mont. at 189, 879 P.2d at 707-08.

¶37     Further, as discussed above, subrogation is an equitable doctrine used to avoid unjust enrichment.  The Board fails to set forth a legitimate argument that Continental has

12

been unjustly enriched under these circumstances. One cannot be unjustly enriched by failing to pay a debt one does not owe.

¶38 For these reasons, the Board has no right to subrogation through either Community Mutual or Barter Gas to recover damages from Continental.

¶39 Finally, we address the Board's argument that monetary discovery sanctions awarded against Continental were insufficient. The Board claims that the District Court abused its discretion in refusing to further sanction Continental by shifting the burden of proof to require Continental to prove the terms of its policy with Barter Gas.

¶40 During discovery, the Board moved for production of Continental's insurance policy and any other documents related to the policy. At that time, the only evidence of the policy in the possession of the Board was the notice of cancellation dated December 9, 1985. Prior to the depositions of several of its representatives, conducted August 19, 2004, Continental had denied in its discovery responses that it had any additional information about the policy.[7] At the depositions however, the Board learned of a database that referenced the location and identifying number of a storage box that might contain the insurance policy. A search was conducted, but the policy was not found. However, the identification number used in the database matched the number on the notice of cancellation, thus evidencing the existence of a policy.

¶41 Through the depositions, the Board also learned of a loss history that was in the possession of Continental. The loss history showed six different claims made under the policy number referenced in the notice of cancellation and database. The District Court

---

[7] Continental's Response to the Board's First Combined Discovery Requests was dated February 13, 2004.

13

found that this loss history was in the possession of Continental by November 2003, and the database mentioned above was discovered by Continental sometime in June 2001. The Board argues that such information, if provided earlier, may have led to additional discoverable materials relating to the terms of the lost policy. Thus, the Board contends the burden of proving such terms should have shifted to Continental.

¶42 We review a district court's imposition of discovery sanctions for an abuse of discretion. *Lewistown Propane Co. v. Moncur*, 2002 MT 349, ¶ 22, 313 Mont. 368, ¶ 22, 61 P.3d 780, ¶ 22. This Court has consistently deferred to a district court's imposition of sanctions because "[t]he trial judge is in the best position to know . . . which parties callously disregard the rights of their opponents and other litigants seeking their day in court. The trial judge is also in the best position to determine which sanction is the most appropriate." *Cass v. Composite Indus. of Am., Inc.*, 2002 MT 226, ¶ 19, 311 Mont. 406, ¶ 19, 56 P.3d 322, ¶ 19 (quoting *Dassori v. Roy Stanley Chevrolet Co.* (1986), 224 Mont. 178, 180, 728 P.2d 430, 431).

¶43 A sanction under Rule 37(d)(2), M.R.Civ.P., is appropriate when a party fails "to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories." In analyzing the appropriateness of the sanction in relation to the abuse, we may consider: (1) whether the consequences imposed by the sanctions relate to the extent and nature of the actual discovery abuse, and (2) the extent of the prejudice to the opposing party, which resulted from the discovery abuse. *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 72, 303 Mont. 274, ¶ 72, 16 P.3d 1002, ¶ 72.

¶44 The issues pertinent to the Board's discovery request were whether an insurance

policy existed and, if so, what the terms of the policy were. Thus, sanctions were warranted as Continental did not timely provide what information it had concerning the policy. However, the prejudice suffered by the Board was no greater than that determined by the District Court. The District Court ultimately found that a policy did exist between Continental and Barter Gas, thus the Board suffered no prejudice with respect to that issue.

¶45　Further, the database and loss history, although direct evidence that a policy existed, provide no direct information about the terms of the policy. The Board's argument that receipt of this information earlier in the proceedings would have provided additional time to conduct further discovery and perhaps find additional information is pure speculation. The Board did not move to reopen discovery when it had the opportunity. If the Board truly felt further discovery would have produced additional materials, it should have at least asked for the opportunity to conduct such discovery, in addition to its motion for sanctions.

¶46　The District Court found that Continental to an extent had done its best in locating the requested materials, given that one of the companies involved had been merged out of existence and the papers in question were in a remote storage location. We conclude that the District Court did not abuse its discretion in limiting the sanction imposed to attorney fees and costs.

¶47　Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS