JUSTICE McKINNON,
dissenting.
¶44 In my opinion, the Court follows a trail, perhaps created in Oberson, which misconstrues sections of the Restatement, our choice of law precedent, and well-established principles of subrogation. The underlying personal injury action in Montana is against a third-party tortfeasoror for damages. In Phillips we adopted §§ 6(2) and 145 of the Restatement (Second) of Conflict of Laws for tort actions explaining that “we see no reason to have one choice of law approach for contracts and another for torts.” Phillips, ¶ 23. I see no reason to distinguish choice of law for subrogation claims from the underlying action. If, pursuant to §§ 6(2) and 145, Montana law is the appropriate choice of law for the underlying tort action, then Montana’s made whole doctrine would foreclose payment of Cudd’s subrogation lien until Talbot has been fully compensated for his injuries. A subrogation claim flows from the potential damages Talbot might receive in successfully prosecuting his tort action. Cudd’s subrogation claim substitutes Cudd for its insured, Talbot, and arises from a potential judgment against WMK- *124 Davis, as a result of WMK-Davis’ tortious conduct within the State of Montana. Following our rejection in Oberson of § 185,1 cannot agree with the Court’s adoption of a new and inflexible rule for resolving a “choice” of law. Consistent with Phillips, I would apply the most significant relationship test to the underlying tort action. Montana’s strong policy of requiring that an injured party be made whole before subrogating a claim, in addition to the interests of Oklahoma, would be considered in applying the §§ 6(2) and 145 factors. I would remand for such a consideration to be made. If Montana law applies, no subrogation will occur unless, and until, Talbot is fully compensated for his injuries.
¶45 Under Montana law, one who asserts the right of subrogation must step into the shoes of, or be substituted for, one whose claim or debt he or she paid. Skauge v. Mountain States Tel. & Tel. Co., 172 Mont. 521, 526, 565 P.2d 628, 630 (1977) (“the person substituted will succeed to the rights of the creditor in relation to the debt or claim.”). See also Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co., 2006 MT 133, ¶ 13, 332 Mont. 352, 137 P.3d 522; Youngblood v. American States Ins. Co., 262 Mont. 391, 397, 866 P.2d 203, 206 (1993). Thus, an “insurer seeking subrogation has only those rights maintained by its insured. ”Nimmick v. State Farm Mutual Automobile Ins. Co., 270 Mont. 315, 1158, 891 P.2d 1154, 1159 (1995). In St. Paul Fire & Marine Ins. v. Glassing, 269 Mont. 76, 80, 887 P.2d 218, 220 (1994), we adopted language from Couch on Insurance stating:
The right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. In other words, the concept of subrogation merely gives the insurer the right to prosecute the cause of action which the insured possessed against anyone legally responsible for the latter’s harm, ....
16 Couch on Insurance 2d, § 61:37 (1983). Since an “insurer’s claim is derived from that of the insured, its claim is subject to the same defenses ... as though the action were sued upon by the insured.” St. Paul Fire & Marine Ins., 269 Mont. at 80, 887 P.2d at 220.
¶46 Based upon the derivative nature of a subrogation claim, I would conclude that isolating the subrogation claim from the underlying tort claim for an independent choice of law analysis is inappropriate. The subrogation claim flows from the injured party’s recovery of damages under a particular state’s law. While a state’s interest in subrogation may be relevant to deciding the choice of law for the underlying tort action, it is subsumed into consideration of the §§ 6(2) and 145 factors. *125 As with all the Restatement factors, a state’s policy regarding subrogation would be just one of the relevant factors a court would consider. Such an approach is consistent with our precedent, harmonizes Oberson and Phillips, and applies principles of subrogation and the Restatement consistently.
¶47 In Oberson, Musselman filed a personal injury claim in Montana and recovered a judgment against a third-party tortfeasor. Oberson, ¶ 6. We refused to adopt § 185 in resolving the subrogation lien of Musselman’s Michigan-based employer, International, explaining that applying Michigan law to the subrogation issue would defeat Montana’s strong policy of ensuring an injured party is fully compensated for his injuries. Oberson, ¶ 17. In declining to adopt § 185 because it was inflexible and prevented consideration of Montana’s public policy, we explained that the “workers compensation context giving rise to the parties’ relationship here is of no legal consequence, as the money Federated seeks flows directly from Musselman’s injury in Montana, to which Montana’s federal court applied Montana tort law to conclude that damages were warranted.” Oberson, ¶ 13. Accordingly, our decision to reject § 185 in Oberson expressly relied upon the derivative nature of a subrogation lien. We refused to allow International to assert Michigan subrogation law in the context of an underlying tort action which had been brought by the insured in Montana and decided pursuant to Montana law. Oberson, ¶ 17. While much of our discussion was in the context of public policy citing at length precedent setting forth Montana’s made whole doctrine, as the Court here does as well, the analytical basis for our decision in Oberson was the premise that the subrogation claim flowed from damages obtained following the application of Montana law to the underlying tort action. Oberson, ¶ 11. Concluding the workers compensation context was of no legal consequence when the underlying tort action was controlled by Montana law, we rejected adoption of § 185 in favor of a more flexible approach which would take into consideration Montana’s strong policy of precluding the subrogation of a tort award until the damaged party fully recovers. Oberson, ¶ 13. In contrast to these proceedings, we specifically recognized in Oberson that there was no countervailing public policy of another state to consider. Our analysis in Oberson was, therefore, incomplete inasmuch as we failed to articulate an analytical framework to be applied, following our rejection of § 185, when there are two or more competing public policy interests of different states. Significantly, in Oberson and here, we have left undisturbed our decision in Phillips where we expressly *126 adopted the most significant relationship test as the analysis to be applied in choice of law disputes. In my view, and in contrast to the Court’s decision here, we cannot have a choice of law analysis if there is no analysis and no “choice” to be considered.
¶48 We held in Phillips that the “most significant relationship” analysis and the factors set forth in §§ 6(2) and 145 are to be applied for determining choice of law in a tort action. Phillips, ¶ 23. We expressly adopted the “most significant relationship” test as the procedure for deciding choice of law issues in Montana, absent a statutory directive to the contrary, explaining that there was no reason to have different tests applied which are dependent upon the type of action pursued. Indeed, should Montana law not be applied to the underlying proceeding but nonetheless applied to the subrogation issue, it is unclear how Montana’s public policy is being furthered. The employer-employee relationship arose in Oklahoma and the underlying action and potential damages would be resolved through and flow from the application of another state’s laws. As in American Interstate, it would be hard to conclude that Montana’s public policy is advanced by applying our made whole doctrine to such a situation.
¶49 Moreover, we held in Phillips that considerations of public policy are expressly subsumed within the most significant relationship approach, referring specifically to § 6(2)(b) and (c). Phillips, ¶ 75. We explained that “in order to determine which state has the more significant relationship, the public policies of all interested states must be considered. [Therefore, a] ‘public policy’ exception to the most significant relationship test would be redundant.” Phillips, ¶ 75. We affirmed that “Montana does not recognize a public-policy exception to the ‘most significant relationship’ analysis because the purpose of the analysis is to resolve conflicts between different states’ competing policies).] ...” Madroo v. Nationwide Mut. Fire Ins. Co., 2008 MT 275, ¶ 53, 345 Mont. 262, 191 P.3d 389. The Court here, however, enunciates a rule in direct contravention to Phillips and Madroo by recognizing a public policy exception to be applied only in the context of subrogation claims and without any surrounding analytical framework. Talbot is not entitled to the protections of Montana law unless the Court first determines that Montana law applies to the issues presented in the underlying tort action. There is no public policy exception to the “significant relationship test.” Phillips, ¶ 75; Madroo,¶ 53. In order to determine the choice of law in a tort action, we must apply the factors in § 6(2) as Phillips requires to the underlying tort action.
*127 ¶50 Finally, in searching for support of its “choice” of law principle, the Court refers to § 90 of the Restatement. That section provides: “[n]o action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum.” However, the scope of the section is thoroughly explained in comment (a):
The rule of this Section has a narrow scope of application. It applies only to situations where the forum refuses to entertain the suit on the ground that the cause of action is contrary to a strong local public policy. The rule does not apply to situations where the forum does decide the controversy between the parties and, on the stated ground of public policy, applies its own local law, rather than the otherwise applicable law, in determining one or more of the issues involved.
The rule of this Section does not justify striking down a defense good under the otherwise applicable law on the ground that this defense is contrary to the strong public policy of the forum. Such action involves more than a mere denial of access to the court. Rather, it is a preliminary step to rendition of a judgment on the merits. It involves application of the local law of the forum to determine the efficacy of a defense and thus to decide the ultimate rights of the parties. The Supreme Court of the United States has held that it is a violation of due process for a State to strike down a defense under a foreign law as being contrary to its public policy if the State has no reasonable relationship to the transaction and the parties. Home Ins. Co. v. Dick, 281 U.S. 397 (1930).
In contrast to the circumstance present in these proceedings, cases where a suit on a foreign cause of action were dismissed on public policy grounds include Ciampittello v. Ciampitiello, 54 A.2d 669 (Conn. 1947) (gambling), Cerniglia v. C.&D. Farms, Inc., 203 So. 2d 1 (Fla. 1967) (contract against competition), and Dorado Beach Hotel Corp. v. Jernigan, 202 So. 2d 830 (Fla. 1967) (gambling).
¶51 The Court cites American Interstate in support of applying § 90 to these proceedings. American Interstate was a certified question from the federal court as follows: “Where a conflict of law issue exists in a worker’s compensation subrogation claim, should sections 146 and 145, or section 185 of the Restatement of the Law of Conflicts govern?” American Interstate, 861 N.E. 2d at 522 (emphasis added). However, the Supreme Court of Ohio found that § 185 applied, and that the laws of the state in which the worker’s compensation benefits had been paid was controlling. The court went on to explain that, within the context of § 185, “this general rule is potentially limited ... by Section 90 of the *128 Restatement.” American Interstate, 861 N.E. 2d at 524. The court determined that “I a Ipplying Louisiana law and allowing American Interstate to enforce its subrogation rights would not prejudice the interests of any Ohio citizens or undermine the state’s public policy.” American Interstate, 861 N.E. 2d at 529. The court observed that the “only parties with a substantive interest in the outcome of the subrogation issue... [were] all Louisiana citizens.” American Interstate, 861 N.E. 2d at 529. The court concluded that “[s]ince no Ohio party or citizen has a substantive interest in the outcome of the subrogation claims, Ohio’s interest in those issues is minimal.” American Interstate, 861 N.E. 2d at 529 (emphasis added). Protection of Ohio’s public policy therefore did not require any further analysis of the Louisiana’s worker’s compensation subrogation law. Unlike the Court’s decision here, in American Interstate the analytical framework upon which the court based its decision was § 185. Section 90 was applied as an exception to § 185. Moreover, in the instant proceedings, Talbot is an Oklahoma resident and there is no public policy interest in Montana of ensuring a Louisiana resident is made whole, unless Montana law is applied to the underlying tort action. Significantly, the certified question in American Interstate was in the disjunctive and, after finding § 145 and the most significant relationship test inapplicable, applied § 90 only in the context of § 185. The application of § 90 in American Interstate mitigated the inflexibility of § 185 in choice of law disputes for subrogation claims. Ultimately, however, § 90 was not applied in American Interstate as an exception to § 185 because Ohio’s public policy was not advanced by protecting a Louisiana worker. As we have rejected § 185, American Interstate offers no support for the Court’s reasoning.
¶52 In my opinion, when we rejected § 185 in Oberson because it was “inflexible,” we were left with the “most significant relationship” analysis under §§ 6(2) and 145, adopted by this Court in Phillips. As stated in Phillips, considerations of public policy of the forum state and other interested states are subsumed within the “most significant relationship” approach. Here, our decision to find an impenetrable public policy exception pursuant to § 90 replaces the inflexibility of § 185 with another inflexible rule that guarantees there will be no choice of law. Montana law will always be applied to subrogation claims regardless of what countervailing considerations may warrant and whether Montana has any connection or interest in the proceeding at all. We have never established impenetrable barriers to prevent considered thought of valid competing interests, even when they are *129 embodied in our constitution and statutes. See generally Krakauer v. State, 2016 MT 230, 384 Mont. 527, 2016 Mont. LEXIS 811.
¶53 Following our rejection of § 185 in Oberson and based upon the derivative nature of a subrogation claim, I would hold unambiguously that the “most significant relationship” test is to be applied in resolving conflicts over the choice of law to the underlying tort action and, that the competing public policy interests of different states regarding subrogation are subsumed in the application of §§ 6(2) and 145, along with all the relevant factors in deciding the choice of law. If Montana law is the choice of law for Talbot’s underlying tort action, then no subrogation will occur unless Talbot is fully compensated for his injuries.
¶54 I dissent from the Court’s failure to provide a well-reasoned analytical framework for determining the choice of law in these proceedings.