No. 91-146

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

RONALD and NANI LINDER, Husband and Wife,

      Plaintiffs and Respondents,

-vs-

MISSOULA COUNTY, a governmental entity,

      Defendant and Appellant,

  and

MISSOULA COUNTY, a governmental entity,

      Third-party Plaintiff and Appellant,

-vs-

STATE OF MONTANA, DEPARTMENT OF HEALTH
AND ENVIRONMENTAL SCIENCES,

      Third-party Defendant and Respondent.

FILED

JAN 14 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
              In and for the county of Missoula,
              The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Sarah M. Power; Gough, Shanahan, Johnson & Waterman,
           Helena, Montana.

      For Respondents:

           Chris D. Tweeten; Hughes, Kellner, Sullivan & Alke,
           Helena, Montana.

Heard:   October 23, 1991

Submitted:   November 21, 1991

Decided:   January 14, 1992

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an Order of the Fourth Judicial District Court, Missoula County, Montana wherein summary judgment was granted to the State in a negligence claim surrounding an outbreak of tuberculosis in Missoula County. Missoula County urges reversal, since a previous action arising from the same outbreak incident resulted in an opposite ruling at the district court level. We affirm in part and reverse in part.

We address the following dispositive issues:

I.    Whether the State's summary judgment motion on the contribution and actionable duty issues is barred by the doctrine of collateral estoppel when, in the context of a third-party action, a dismissal with prejudice is entered into as a result of a release and settlement agreement that involved the same issues?

11.    Does the running of the statute of limitations on an underlying action by plaintiff bar the County's claim for contribution against the State?

In **1979,** Georgia Katie Chamberlain, a tubercular, moved to Missoula County from out of state. An outbreak of tuberculosis was later traced to Mrs. Chamberlain in Missoula County. The Montana Department of Health and Environmental Sciences and Missoula City-County Health Department monitored her condition. In **1983,** numerous individuals in Missoula County, including Nani Linder, reacted positively to a tuberculosis test. In **1986,** various individuals filed suit against Missoula County (County) alleging negligence in monitoring Mrs. Chamberlain's condition. These suits can be grouped as follows:

1)    Hardin v. Missoula County (Docket No. **64724)**

2)    Linder et al. v. Missoula County (Docket No. **64030)** (included were plaintiffs "Heavner"); and

2

3)   Various unfiled claims.

The County filed a motion to dismiss in July of 1986 which was denied.  The County, in August of 1986, then filed a third-party claim against the State of Montana (State) seeking contribution in both the Hardin and Linder actions.

In November 1988, Judge Wheelis denied the State's motion for summary judgment in the Hardin case and granted Missoula County's cross-motion for partial summary judgment on the existence of a duty of care on the part of the State.  This Court denied the State's petition for supervisory control.  After Judge Wheelis' decision in the Hardin case, all but the Linder claim settled via a "settlement and release agreement" that specifically excepted the Linder claim.  Accordingly, appropriate dismissals with prejudice were filed.

Later, the State filed a motion for summary judgment with regard to the Linder case and Missoula County filed a motion for partial summary judgment.  The issues raised in the motions were almost identical to those which the State unsuccessfully argued in the Hardin action.  On November 5, 1990, the District Court (Hon. Leif Erickson) granted the State's motion while denying Missoula County's and Missoula County appeals.

Issue I.   COLLATERAL ESTOPPEL

We previously stated that:

> Collateral estoppel is a form of res judicata. Quite simply, the doctrine "precludes relitigation of issues actually litigated and determined in a prior suit." Lawlor v. National Screen Service (1955), 349 U.S.

3

322, 75 S.Ct. 865, 99 L.Ed 1122. It differs from res judicata, in that res judicata bars the same parties from relitigating the same cause of action, while collateral estoppel bars the same parties, or their privies, from relitigating issues which have been decided with respect to a different cause of action. Brault v. Smith (1984), 209 Mont. 21, 679 P.2d 236.

The doctrine has three elements:

1.    The issue has been decided in a prior adjudication and is identical to the one presented.

2.    A final judgment on the merits was issued.

3.    The party against whom the plea is asserted was a party or privity to the party in the prior adjudication.

Smith v. Schweigert (1990), 241 Mont. 54, 58, 785 P.2d 195, 197.

To determine whether collateral estoppel is proper in the case at bar, we focus on element number two. The term "final judgment" has been interpreted in many and varying ways. What constitutes a final judgment is not always clear.

Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

Montana v. United States (1979), 440 U.S. 147, 154, 99 S.Ct 970, 973, 59 L.Ed.2d 210, 217.

In this case all but the Linders signed a "Settlement and Release Agreement." Such a settlement is in the family of "consent judgments" and indicates that the parties chose to remove the action from the court arena. We previously stated that "the meaning of the consent judgment is to be gathered from the terms of the contract and the judgment should not be extended beyond the clear import of the terms." First Bank Missoula v. District Court

4

(1987), 226 Mont. 515, 523, 737 P.2d 1132, 1137. Accordingly, we look to the agreement in this case for guidance and find that the "Settlement and Release Agreement" specifically and explicitly excluded the Linder claim as follows:

> 7. The State and County . . . have negotiated an agreement settling all claims which have arisen or may arise between the State and the County from the subject matter described herein, with the sole and exclusive exception of the claims arising from the claims asserted against the County by Ronald and Nani Linder.

> 8. The State and County agree and finally compromise and settle all claims available to the County against the State arising from . . . contact of any kind, direct or indirect, with Georgia Katie Chamberlain, saving and excepting only the claims filed in Missoula County Docket 64030 on behalf of Ronald and Nani Linder. . . .

> . . .

> 11. The County acknowledges that settlement of the claims settled herein shall not be construed, in the context of the claims of Ronald and Nani Linder or in any other context, as an admission of liability on the part of the State, and that the State expressly denies liability for the claims of Ronald and Nani Linder. . . .

This evidence clearly indicates a lack of intent to include the Linders in the settlement. Nor do we find intent to foster any issue preclusion. On the contrary, looking at the settlement document set forth above, it is evident that the parties did not intend to create any finality with regard to the issues as they might arise in the Linder claim. Essentially, two groups of plaintiffs filed suit separately. All settled prior to trial save one, Nani Linder. It is obvious that the agreement lacks any issue preclusive intent, and none can be inferred.

This matter entails addressing the question of whether a

5

consent judgment constitutes a final judgment on the merits by a court of competent jurisdiction. If so, it may possibly serve a preclusive effect on the same issues. Ordinarily, a consent judgment approving a settlement does not give rise to collateral estoppel or issue preclusion. Avondale Shipyards, Inc. v. Insured Lloyd's (5th Cir. **1986), 786** F.2d **1265,** 1272. The intent of the parties in the settlement agreement is a critical component of element number two.

> This accords with the view of a number of legal scholars, who treat the question of the extent, if any, of the finality created by a consent decree to be one of the intention of the parties. If they have in their compromise indicated clearly the intention that the decree to be entered shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated.

Kaspar Wire Works, Inc. v. LECO Engineering & Mach. (5th Cir. **1978), 575** F.2d **530, 539.**

A consent judgment is basically contractual in nature and its preclusive effects should be measured by the intent of the parties. A consent judgment is issue preclusive only if it is clear that the parties intended to give it that effect. Southern Pac. Communications Co. v. American Tel. & Tel. Co. (D.C. Cir. **1984), 740** F.2d **1011,** 1021.

> Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation. . . In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus <u>consent judgments ordinarily support claim preclusion but not issue preclusion</u>.

Wright, Miller and Cooper, Federal Practice and Procedure:

Jurisdiction § 4443, at 382-385 (1985) (emphasis added).

With respect to element number three, we also point out that the parties in the Hardin and Linder suits are not identical. We acknowledge the existence of the County and State as common parties, but the plaintiffs, while having similar injuries, are not the same, nor are they privies of one another.

Today, we enunciate a rule that, generally, consent agreements do not have an issue preclusive effect on future litigants, unless that is the intent of the parties. The order of dismissal in Hardin was a consent judgment based on a settlement agreement which specifically excluded the Linders. Since the agreement lacked evidence of an intent to preclude future litigation on the issues, the requisite elements of collateral estoppel are not present. Therefore, we conclude that the application of the doctrine of collateral estoppel is improper in the case at bar. Accordingly, we affirm the District Court on this issue.

Issue 11. STATUTE OF LIMITATIONS

The State urges that since the statute of limitations has run on the Linders' claim against the State under § 27-1-703, MCA, the State is "a party against whom recovery is not allowed" prohibiting the County's contribution claim. We disagree.

The State relies on our opinion of State ex rel. Deere & Co. v. District Court (1986), 224 Mont. 384, 730 P.2d 396. Deere is not on point and distinguishable from the case at bar in several respects. Deere involved two defendants, Deere and Wade's Backhoe.

7

Prior to trial, Deere settled for $25,000 and Wade's Backhoe tried to join Deere under a contribution theory which we disallowed. We said that Wade's Backhoe could not successfully join Deere because, under § 27-1-703, MCA, Deere was not a party against whom recovery was possible, due to Deere's settlement with the plaintiff. Settlement is a way for a defendant to eliminate future liability. In the case at bar the facts are somewhat similar as to the involvement of a plaintiff and two potential defendants. However, the similarity ends here even though the plaintiffs initiated suit solely against the County and later the County sought to join the State via contribution. In the instant case, the plaintiffs settled with neither party; this is a stark difference from the facts of Deere. Clearly, this difference makes the case at bar distinguishable from Deere and the cases that follow it. (See Sprinkle v. B.N. Railroad (1989), 236 Mont. 383, 769 P.2d 1261.)

We conclude that the instant case does not fall within the purview of the statutory language of § 27-1-703, MCA, and therefore the County could conceivably have a contribution action against the State. Accordingly, we move on to the statute of limitations issue specifically.

The State asserts that since the statute of limitations has run on the plaintiffs' original claim, the County is barred by the underlying statute of limitations and cannot initiate a contribution cause of action to join the State. This is a case of first impression in Montana.

A statute of limitations is meant to provide a reasonable

period of time in which wronged parties can initiate suit and obtain redress. Such time frame also allows defendants to rest easy after the passage of a requisite period of time, so as not to keep causes of action forever lurking in the distance. The time period specified by a statute of limitations seeks to balance the interests of both parties.

We carefully consider the two pathways possible on the statute of limitations issue. The State asserts that the only reasonable choice in the case at bar is to adopt the statute of limitations of the underlying action, thereby barring the County's contribution claim against the State. On the other hand, if such a position is taken, the County accurately points out that full redress will be denied to wronged parties especially when potential defendants are not easily identified, or when existing factual circumstances later reveal that a new unjoined party may be partially at fault. Here an existing defendant should not be prevented from obtaining contribution from another non-settling party.

In addressing this issue, we carefully assess and balance the interests of both parties to arrive at a workable but equitable general rule of law. In a situation such as the case at bar, we conclude that an emphasis must be placed on the opportunity for full redress from appropriate parties in keeping with the spirit of Montana's stance on comparative negligence.

Idaho previously addressed this issue in Schiess v. Bates (Idaho 1984), 693 P.2d 440. In Schiess, a wrongful death action, the plaintiff's spouse and one of her children died in a boating

incident which the defendant survived. The plaintiff filed suit on behalf of her surviving children which alleged the defendant's negligence. The defendant denied negligence and claimed contributory negligence on the part of plaintiff's decedent spouse. Plaintiff argued that the defendant's contributory negligence claim was barred by Idaho's statute of limitations for probate. The Idaho court disagreed and set forth a general rule.

> The rule, recognized in nearly all jurisdictions, including Idaho, is that the cause of action for contribution or indemnity is distinct from the underlying cause of action, and the time from which the statute of limitations for such a cause of action begins to run is when the underlying claim, judgment, or settlement is paid or discharged.

Schiess, 693 P.2d at 442; citing May Trucking Co. v. International Harvester Co. (Idaho 1975), 543 P.2d 1159, 1162. In Schiess, since there was no underlying judgment, the claim for indemnity or contribution had not yet arisen, and therefore could not yet be barred by any statute of limitations.

While the statute of limitations addressed in Schiess is that of probate, we see a direct analogy and conclude that the general rule of law enunciated by the Idaho Supreme Court is appropriate for Montana. We note that our reasoning today is in harmony with our opinion in St. Paul Fire & Marine Co. v. Thompson (1969), 152 Mont. 396, 451 P.2d 98, even though St. Paul dealt with an indemnity issue rather than a contribution claim. Though contribution is controlled by statute in Montana, St. Paul is still helpful and consistent with the position we take today. In St. Paul, we stated that "the right of indemnity does not arise until

10

the obligation arises . . . the absolute right does not arise until payment has been made." St. Paul, 152 Mont. at 403, 451 P.2d at 102.

Applying the general rule to the case at bar, the County's contribution claim against the State is not barred by the underlying statute of limitations. The contribution claim is a distinct claim and does not arise until judgment or settlement is paid or discharged. Since the cause of action has not yet arisen it cannot be barred by the statute of limitations. Accordingly, we reverse the District Court on this issue.

Affirmed in part and reversed in part.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11

January 14, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Sarah M. Power
GOUGH, SHANAHAN, JOHNSON & WATERMAN
P.O. Box 1715
Helena, MT 59624-1715

William **A.** Rossbach
ROSSBACH & WHISTON
P.O. Box 8988
Missoula, MT 59807-8988

Chris Tweeten
HUGHES, KELLNER, SULLIVAN & ALKE
P.O. Box 1166
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY _____
Deputy