No. 96-403

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


SAFEWAY, INC.,

Plaintiff and Respondent,

v.

MONTANA PETROLEUM RELEASE
COMPENSATION BOARD,

Defendant and Appellant.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

Gregory A. Van Horssen, Luxan & Murfitt, Helena,
Montana


For Respondent:

Karl J. Englund, Missoula, Montana


Submitted on Briefs: January 9, 1997

Decided:
Filed:


_____
Clerk


Chief Justice J. A. Turnage delivered the Opinion of the Court.

The Montana Petroleum Release Compensation Board appeals a decision of the First Judicial District Court, Lewis and Clark County, on judicial review of an administrative decision by the Board. The court reversed the Board̦s determination that Safeway, Inc., was not eligible to receive reimbursement for cleanup costs associated with a petroleum release on its property. We affirm the decision of the District Court.

The issue is whether the District Court erred in determining that Safeway was eligible for reimbursement for costs incurred in cleaning up a release from an underground storage tank.

In 1979, Safeway purchased property in Polson, Montana, upon which a gas station had been located. Safeway demolished the structures on the property, removed underground storage tanks, and converted the property into a parking lot for its adjacent retail store.

In 1989, a substantial petroleum release was discovered at Bjork Distributing and Beacon Tire in Polson. An environmental consultant who investigated the release eventually opined that the Safeway property may be the source of the contamination.

In September 1992, the Montana Department of Health and Environmental Sciences, Solid and Hazardous Waste Bureau, Underground Storage Tank Program notified Safeway by certified mail that its property had been identified as the potential source for the contamination. The Department required

that you determine the extent and magnitude of contamination emanating from your site and take immediate action to mitigate free product. . . . Within one week of receipt of this letter please begin free product recovery . . . . By October 30, 1992 please submit a Remedial Investigation Work Plan.


Safeway then hired its own environmental consultant, who determined that an underground tank may still be located on Safeway's property. The consultant prepared and submitted to the Department an investigation work plan which was also submitted to the Board for approval and comment. The Department approved the plan and warned Safeway that if a tank or piping was found on the property, Safeway would have to apply for a permit for closure of an

underground storage tank and the tank or piping would have to be removed pursuant to Department regulations.

The consultant found that although the storage tanks had been removed from Safeway's property, piping was still in the ground. The consultant also found several feet of soil contaminated with gasoline. The Department directed Safeway to clean up the site pursuant to the rules set out in ARM 16.45.601, et. seq., which the Department had adopted to govern the methods used for cleaning up releases from petroleum storage tanks.

In early 1994, Safeway submitted to the Board an eligibility check list and application for voluntary registration for reimbursement for costs of cleaning up the petroleum release, pursuant to Title 75, Chapter 11, part 3, MCA. The Board deemed Safeway ineligible for reimbursement because the tank itself had been removed prior to the release detection and because ARM 16.47.314 (1991) requires that the tank be in place when the release is discovered.

Safeway filed a petition for judicial review, disputing the Board's determination of noneligibility. Reasoning that the administrative rule cited by the Board added an additional requirement to the cleanup reimbursement statutes, the District Court declared that part of the rule invalid and reversed the Board's determination.

Did the District Court err in determining that Safeway was eligible for reimbursement for costs incurred in cleaning up a release from an underground storage tank?

As the District Court correctly noted, an agency's findings of fact should be upheld unless they are clearly erroneous, and its conclusions of law should be reviewed for correctness. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

The Petroleum Storage Tank Cleanup Act, codified at Title 75, Chapter 11, part 3, MCA, provides for reimbursement for the costs of cleaning up releases of petroleum products from a petroleum storage tank.

An owner or operator is eligible for reimbursement for the applicable percentage as provided in 75-11-307 (4)(a) and (4)(b) of eligible costs caused by a release from a petroleum storage tank only if:

(a) the release was discovered on or after April 13, 1989;

(b) the department is notified of the release in the manner and within the time provided by law or rule;

(c) the department has been notified of the existence of the tank in the manner required by department rule or has waived the requirement for notification;

(d) the release was an accidental release; and

(e) with the exception of the release, the operation and management of the tank complied with applicable state and federal laws and rules when the release occurred and remained in compliance following detection of the release.

Section 75-11-308(1), MCA.
The term "petroleum storage tank" is defined at 75-11-302(22), MCA:
"Petroleum storage tank" means a tank that contains or contained petroleum or petroleum products and that is:
(a) an underground storage tank as defined in 75-10-403;
(b) a storage tank that is situated in an underground area, such as a basement, cellar, mine, drift, shaft, or tunnel;
(c) an above ground storage tank with a capacity less than 30,000 gallons; or
(d) above ground or underground pipes associated with tanks under subsections (22)(b) and (22)(c), except that pipelines regulated under the following laws are excluded:
(i) the Natural Gas Pipeline Safety Act of 1968 (49 U.S.C. 1671, et seq.);
(ii) the Hazardous Liquid Pipeline Safety Act of 1979 (49 U.S.C. 2001, et seq.); and
(iii) state law comparable to the provisions of law referred to in subsections (22)(d)(i) and (22)(d)(ii), if the facility is intrastate.

The term "underground storage tank" referenced under subpart (a) above is defined at 75-10-403(18), MCA:
"Underground storage tank":
(a) means, except as provided in subsections (18)(b)(i) through (18)(b)(xi):
(i) any one or a combination of tanks used to contain a regulated substance, the volume of which is 10% or more beneath the surface of the ground; and
(ii) any underground pipes used to contain or transport a regulated substance and connected to a storage tank, whether the storage tank is entirely aboveground, partially aboveground, or entirely underground[.]

The Board asserts that the statutory language at 75-10-403(18), MCA, requiring pipes to be "connected to a storage tank" excludes from the definition of "underground storage tank" the pipes under the Safeway property, because those pipes had not been

connected to a storage tank since 1979.  In denying Safeway's claim for cleanup costs, the Board cited the following administrative rule:

> RELEASE DISCOVERED ON OR AFTER APRIL 13, 1989, CONSTRUED
> (1) A tank owner or operator may be eligible under the 603 program for reimbursement for eligible costs result ing from an accidental release from a petroleum storage tank if the release was discovered on or after April 13, 1989, even though the tank, in place, was out of service on the date of discovery or is presently out of service.

ARM 16.47.314(1)(1991)(emphasis added).  Because the storage tanks on Safeway's property were not "in place" when the petroleum release was discovered, the Board found Safeway ineligible for reimbursement for cleanup costs.

The Board points out that an administrative agency's inter- pretation of a statute under its domain is presumed to be control- ling.  Christenot v. State, Dept. of Commerce (1995), 272 Mont. 396, 401, 901 P.2d 545, 548.  However, an agency's rules are valid only if they are "consistent and not in conflict with the statute." Section 2-4-305(6)(a), MCA.

> The courts have uniformly held that administrative regulations are "out of harmony" with legislative guidelines if they (1) "engraft additional and con- tradictory requirements on the statute"; or (2) if they engraft additional, noncontradictory requirements on the statute which were not envisioned by the legislature.

Bell v. Dept. of Licensing  (1979), 182 Mont. 21, 23, 594 P.2d 331, 333 (citations omitted).

This case presents the issue of whether it is permissible and fair for two entities of the State of Montana--the Department and the Board--to use one statutory definition to reach two opposite conclusions, subjecting Safeway to the detriment of the State's regulatory authority over releases from underground storage tanks but denying Safeway the benefit of reimbursement for costs of cleanup.  The Department treated Safeway as if it owned an underground storage tank, requiring Safeway to register and close the "tank" and to clean up the leak from the tank according to its detailed procedures.  The Board, in contrast, treated Safeway as if it did not own an underground storage tank and refused to provide reimbursement for cleanup costs.

The Board points out that the Department and the Board are separate entities and that the petroleum release cleanup require- ments and the reimbursement program are separate statutes, codified at Chapter 10 part 7 and Chapter 11 part 3 of Title 75, MCA. However, it is clear in this case that the Department and the Board were both interpreting the same definition of "underground storage

tank," which is found in the cleanup requirement statutes at 75-10-403(18), MCA, and is cited in the reimbursement program statutes at 75-11-302(22)(a), MCA.

Nothing in the statutory language of 75-10-403(18), MCA, which includes pipes "connected to a storage tank" within the definition of an "underground storage tank," requires that the underground storage tank itself must be in place on the date a petroleum release is discovered. We conclude that the Board's decision is the result of an administrative rule that adds an additional requirement to the statute. As stated above, when an administrative rule adds additional requirements to a statute, the rule is invalid.

Moreover, the administrative rule adopted by the Board is inconsistent with the statutory purpose of protecting the public health and safety and the environment by encouraging prompt cleanup of petroleum releases. Section 75-11-301(5)(a), MCA. It is inconsequential to that purpose whether the petroleum release comes from a pipe formerly connected to an underground storage tank, or from the underground storage tank itself.

We hold that the District Court was correct when it declared invalid that portion of ARM 16.47.314(1)(1991) which adds the requirement that the storage tank itself must be in place on the post-April 13, 1989 date of discovery of a petroleum release. This ruling will not, as the Board argues, result in the use of state funds to remediate releases from tanks which were removed from the ground decades ago--except, as here, where portions of pipe included within the definition of "underground storage tank" remain in the ground and release petroleum.

Because Safeway was treated as the owner of an underground storage tank for purposes of application of cleanup requirements by the Department, it should also be treated as the owner of an underground storage tank for purposes of reimbursement for cleanup by the Board. The petroleum release from the pipes in the ground, which was discovered on or after April 13, 1989, triggers initial eligibility for reimbursement under 75-11-308(1), MCA. It is undisputed that the cleanup plan in this case was approved by the Department. The Board does not allege that the costs were not "actually, necessarily, and reasonably incurred" as required for reimbursement under 75-11-309, MCA.

We affirm the decision of the District Court.

/S/ J. A. TURNAGE

We concur:

```
                  /S/  KARLA M. GRAY
                /S/  JAMES C. NELSON
             /S/  W. WILLIAM LEAPHART
                /S/  JIM REGNIER
```