DA 06-0837

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 194

MONTANA PETROLEUM TANK RELEASE
COMPENSATION BOARD,

  Plaintiff and Appellant,

 v.

FEDERATED SERVICE INSURANCE COMPANY,

  and

MOUNTAIN WEST FARM BUREAU MUTUAL
INSURANCE COMPANY,

  and

NATIONAL FARMERS UNION PROPERTY AND
CASUALTY COMPANY; MUTUAL SERVICE CASUALTY
INSURANCE COMPANY, a mutual service insurance company,

  and

FEDERATED SERVICE INSURANCE COMPANY,

  Defendants and Appellees.

APPEAL FROM: District Court of the First Judicial District,
      In and For the County of Lewis and Clark, Cause Nos. BDV 03-69,
      BDV 03-197, BDV 03-475
      Honorable Jeffrey M. Sherlock, Presiding Judge

      In and For the County of Lewis and Clark, Cause No. ADV 03-472
      Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

   R. Allan Payne, Marc Buyske and James L. Shuler, Special Assistant
   Attorneys General, Helena, Montana

For Appellees:

   Jared S. Dahle, Nelson & Dahle, Billings, Montana

   Jon T. Dyre and Steven W. Jennings, Crowley, Haughey, Hanson, Toole &
   Dietrich, Billings, Montana

   Laura J. Hanson, Meagher & Geer, Minneapolis, Minnesota

   Christian T. Nygren, Milodragovich, Dale, Steinbrenner & Nygren, Missoula,
   Montana

Submitted on Briefs:  December 19, 2007

Decided:  June 3, 2008

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

2

¶1     Plaintiff Montana Petroleum Tank Release Compensation Board (the Board) appeals orders entered in the First Judicial District Court, Lewis and Clark County, granting summary judgment to the defendant insurance companies in four separate actions wherein the Board sought indemnity for payments it made to clean up petroleum spills at several filling stations. Because the issues raised in each case are identical, they have been consolidated for this appeal.  We affirm.

¶2     The Board raises the following issues on appeal:

¶3     1.   Whether this Court's opinion in *Mont. Petroleum Tank Release Compen. Bd. v. Capitol Indemnity*, 2006 MT 133, 332 Mont. 352, 137 P.3d 522, should be overruled.

¶4     2.  Does a separate period of limitation commence after each reimbursement payment made by the Board?

## BACKGROUND

¶5     The Montana Petroleum Tank Release Compensation Board is a state environmental advisory board whose purpose is to protect the public health, safety and the environment by encouraging prompt cleanup of petroleum releases.  *Safeway, Inc. v. Mont. Petroleum Release Compen. Bd.*, 281 Mont. 189, 195, 931 P.2d 1327, 1330 (1997) (citing § 75-11-301(5)(a), MCA).  Among other things, the Board administers the Petroleum Tank Release Cleanup Fund.  Owners and operators of petroleum storage tanks contribute to the Fund, which, in turn, provides reimbursement for specified cleanup costs when their underground tanks leak or spill.  When the Board reimburses owners or operators for their cleanup costs, it

may be entitled to subrogate against insurance carriers whose policies covered the cleanup costs of the owners for petroleum spills or leaks.

¶6    This case deals with petroleum leaks at several facilities across Montana, most of which are gas stations. In each case, the owners of the respective facilities (collectively "facility owners") sought reimbursement from the Board for costs incurred in the cleanup of petroleum leaks. After making payments to the facility owners, the Board originally brought four separate subrogation claims against the facility owners' insurers (collectively "Insurance Companies" or "Insurers"). The details of the Board's claims are briefly as follows:

¶7    In the lead case, *Mont. Petroleum Tank Release Compen. Bd. v. Fed. Serv. Ins. Co.* ("Mountain States Case"), leaks were discovered at three separate gas stations owned by Mountain States Petroleum Corp., Inc.: Bair's Truck Stop in Belgrade, and Kwik Way Convenience Store #3 and Bair's Self-Service in Billings. The leaks were discovered at Bair's Truck Stop in May, 1990; at Kwik Way in December, 1990; and at Bair's Self-Service in April, 1993. Mountain States Petroleum was insured by Federated Service. However, Mountain States did not file a claim for payment of cleanup expenses under its policy with Federated Service. Instead, Mountain States Petroleum applied to the Board for reimbursement. The Board claims it has paid $490,197 in 153 installments over 16 years to Mountain States for its cleanup costs. In April, 2002, more than eight years after it began making payments, the Board made a demand against Federated Service for repayment of its advances to Mountain States Petroleum. After waiting another year with no response to its demand, the Board filed its complaint against Federated Service in April, 2003.

4

¶8 In an identically named case, *Mont. Petroleum Tank Release Compen. Bd. v. Fed. Serv. Ins. Co.* ("Robertson Oil Case"), leaks were discovered at two facilities in Big Sandy owned by Robertson Oil. The first leak, at a service station, was discovered in December, 1990. The second leak, at a bulk plant, was suspected in the fall of 1991 and confirmed in June, 1992. As with Mountain States Petroleum, Robertson Oil was insured by Federated Service, but apparently did not file a claim under its policy. Rather, Robertson Oil applied for and received reimbursement from the Board. To date, the Board has reimbursed Robertson Oil $698,384 in 107 payments over 15 years. More than ten years after the leaks were discovered, the Board made a demand for payment to Federated Service in August, 2002. After getting no response the Board filed its complaint in April, 2003.

¶9 The third case, *Mont. Petroleum Tank Release Compen. Bd. v. Natl. Farmers Union Prop. & Cas. Co.* ("Kremlin Case"), involved policies issued to Farmer's Union Oil Company of Kremlin. Leaks were discovered at the service station in July, 1991. Kremlin began cleanup shortly thereafter and started receiving reimbursement payments from the Board in 1992. At no time did Kremlin notify either of its insurers, National Farmers Union Property and Casualty Company, or Mutual Service Casualty Insurance Company, of the spills. Nor did it make any claim under the policies. To date, the Board has reimbursed Kremlin $411,048 in 79 installments over 15 years. In August, 2002, the Board made a demand for payment to both of Kremlin's insurers. The claim was denied in January, 2003, and the Board filed its complaint against the insurance companies in August, 2003.

¶10 The final case, *Mont. Petroleum Tank Release Compen. Bd. v. Mountain West Farm Bureau Mut. Ins. Co.* ("Waleri Case"), involved policies issued by Mountain West Farm Bureau Mutual Insurance Company to Roger and Geraldine Waleri which covered their service station in Reedpoint. The Waleris lost possession of the station through foreclosure in 1989 and the station was subsequently acquired by Oran and Elskeline Pratton. Mountain West did not insure the Prattons or the service station while the Prattons owned it. A leak was discovered at the site in June, 1991. The Board began reimbursing the Prattons for their cleanup expenses in November, 1991, and to date has paid $458,762 in 236 installments over 15 years. No claim under the Mountain West policy was made. In February, 2002, the Board made a demand for payment to Mountain West, which denied the claim the following month. The Board filed its complaint in February, 2003. In their brief, Appellee Insurance Companies allege that Mountain West was improperly included in the Board's suit because Mountain West insured only the Waleris, not the Prattons, and no claim has ever been made against the Waleris for cleanup costs.

¶11 The District Court granted summary judgment to each Insurer because the Board brought its claims beyond the applicable eight-year statute of limitations for a contract action. From those orders, the Board appeals.

STANDARD OF REVIEW

¶12 We review a district court's grant of summary judgment *de novo* and apply the same criteria as the district court. *Sampson v. Natl. Farmers Union Prop. & Cas. Co.*, 2006 MT

6

241, ¶ 7, 333 Mont. 541, ¶ 7, 144 P.3d 797, ¶ 7.  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  M. R. Civ. P. 56(c).   In this case, there are no material factual disputes.

DISCUSSION

**Issue One**

¶13    **Should this Court's opinion in *Mont. Petroleum Tank Release Compen. Bd. v. Capitol Indemnity* be overruled?**

¶14    In each of these cases the District Court granted the Insurance Companies' motion for summary judgment based in large part on this Court's holding in *Mont. Petroleum Tank Release Compen. Bd. v. Capitol Indemnity*, 2006 MT 133, 332 Mont. 352, 137 P.3d 522, in which the Court held that the statute of limitations for a contract claim began to run when all the elements had accrued for the insured to have filed a claim with its insurer – not when the claim had been submitted to and then denied by the insurer.  *Capitol Indemnity*, ¶ 18.

¶15    According to the Board, *Capitol Indemnity* was wrongly decided because it directly conflicts with § 27-2-102(1)(a), MCA, governing the accrual of a cause of action.  Section 27-2-102(1)(a), MCA, states:

> (1) For the purposes of statutes relating to the time within which an action must be commenced:
> (a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action.

7

¶16 Notwithstanding the Board's admission that no claims under the various insurance policies were made within eight years of the facility owners' discovery of the spills and their corresponding obligation for cleanup, the Board argues that under § 27-2-102(1)(a), the period of limitations had not yet commenced because the Insurance Companies had not denied a claim, and therefore no court was authorized to accept jurisdiction of the action. According to the Board, *Capitol Indemnity* is incorrect, in that it holds that the statute of limitations begins to run when all elements for a claim have accrued, whereas § 27-2-102(1)(a), MCA, mandates that a claim has accrued only after a court is "authorized to accept jurisdiction" – in this case, after it has been submitted to and denied by an insurer.

¶17 As a subrogee, the Board stands in the shoes of its subrogors, the facility owners. Thus it cannot stand in a better position than the facility owners. *Mont. Petroleum Tank Release Compen. Bd. v. Crumley's, Inc.*, 2008 MT 2, ¶ 61, 341 Mont. 33, ¶ 61, 174 P.3d 948, ¶ 61. Therefore, the Board is subject to the same statute of limitations as the facility owners. *See St. Paul Fire & Marine Ins. v. Glassing*, 269 Mont. 76, 81, 887 P.2d 218, 221 (1994) (citation omitted) (statute of limitations begins to run on a subrogation claim at the same time the statute of limitations would have began to run on the insured's action against the tortfeasor).

¶18 Contrary to what the Board suggests, the filing and denial of an insurance claim is not a statutory prerequisite to filing suit to recover for an insured loss that has occurred. That is to say, once the loss occurred, § 27-2-102(1)(a), MCA, did not prohibit the insured facility owners from filing suit for payment under their insurance contracts. Had they done so, the

8

district court would have been authorized to accept jurisdiction over the lawsuits. *See* Mont. Const. art. VII, § 4(1); § 3-5-302(1)(b), MCA. Of course, it might not make much sense to commence a suit before making a demand on the policies. Moreover, had the facility owners chosen to sue, the lawsuits would be rendered moot if the insurance companies were simply to pay what was due under their policies. Nevertheless, all elements of the claim or cause existed when the events that were insured against occurred. When these spills insured by these policies occurred, the right to maintain an action on the insurance was complete. At that time, the period of limitations began to run and the insureds had eight years to commence an action to recover under their policies.

¶19    Indeed, to hold otherwise would allow the Board, or any other insured, to endlessly draw out a claim and then file suit well after the statute of limitations had run. Preventing such a result is the exact reason for our holding, both in *Capitol Indemnity* and in *Nelson v. Twin Bridges High School*, 181 Mont. 318, 593 P.2d 722 (1979). In *Nelson*, we concluded that if the statute of limitations did not begin to run until the plaintiff's claim had been denied there would be no limitation on when the claim could be filed. As we noted in *Nelson*, a rule that delays the commencement of the period of limitations until a claim under a contract is made and denied would "effectively nullify the purpose of any statute of limitations." *Nelson*, 181 Mont. at 321, 593 P.2d at 724.

¶20    A statute of limitations provides a time within which parties can litigate a case:

> A statute of limitations is meant to provide a reasonable period of time in which wronged parties can initiate suit and obtain redress. Such time frame also allows defendants to rest easy after the passage of a requisite period of

time so as not to keep causes of action forever lurking in the distance. The time period specified by a statute of limitations seeks to balance the interests of both parties.

*Linder v. Missoula Cnty.*, 251 Mont. 292, 298, 824 P.2d 1004, 1007 (1992). Adopting the Board's argument would undermine these well established principles.

¶21 *Capitol Indemnity* is consistent with this Court's precedent and we decline to overrule it.

## Issue Two

¶22 **Does a separate period of limitation commence after each reimbursement payment made by the Board?**

¶23 The Board also argues that our holding in *Capitol Indemnity* requires that a separate period of limitation commences after each of the 575 payments the Board alleges it made to the owners of the petroleum facilities.

¶24 As we noted both above and in *Capitol Indemnity*, the statute of limitations in these cases is based not on payment, request for payment, or denial of payment. Rather, it is based on when the claim accrues; that is, upon discovery of the leak and the subsequent obligation on the part of the owners to clean up the spilled petroleum, which triggered their right to maintain an action under an applicable insurance policy.

¶25 The Board relies on this Court's holding in *St. Paul Fire & Marine Ins. Co. v. Thompson*, 152 Mont. 396, 451 P.2d 98 (1969), for the proposition that a party has no claim for indemnification until payment of a judgment. In *St. Paul*, after entry of a judgment against an employee for negligence and his employer based on the legal theory of *respondeat*

10

*superior*, the employer's insurer sought indemnification from the negligent employee. This Court held that the statute of limitations for the insurance company's indemnity claim did not start running at the time of the accident giving rise to the original injury, but, rather, only after the employee's liability had been determined in a separate court action. *St. Paul*, 152 Mont. at 403, 451 P.2d at 102. Once the employee and employer's liability had been established at trial and then upheld on appeal, the insurer's obligation to pay was confirmed. Only at that time was the insurance company's right to indemnification established. Had the employee been found not to be negligent, his employer would not have been liable through *respondeat superior*, and the insurance company would not have been required to pay damages to the plaintiff in the underlying case.

¶26    In essence, in *St. Paul*, the Court concluded that only once the employer's liability had been established through *respondeat superior* did the statute of limitations begin to run on the insurer's indemnification claim. Here, on the other hand, in this first-party case, the facility owners' liability for cleanup was established when the leaks were discovered and the obligation for cleanup occurred. Thus, this case is unlike *St. Paul* in that there the insurance companies' obligation to pay was dependent on a third party's recovery in tort, while in this case the claim under the insurance policies matured when the obligation to clean up arose. Once the alleged obligation to pay under the policies arose, the periods of limitation began to run both for the facility owners and for the Board as their subrogee.

¶27    The Board also cites *Fulton v. Fulton*, 2004 MT 240, 322 Mont. 516, 97 P.3d 573, in support of its position. In *Fulton*, a domestic relations case, we noted that monthly spousal

11

maintenance payments due under a court order were, in essence, installment payments, each with a separate period of limitation. *Fulton*, ¶ 14. Here, on the other hand, the Insurance Companies were not obligated to make installment payments to the facility owners. Rather, if the losses were insured as alleged, the insurers had a contractual obligation to pay the facility owners the cost to clean up the petroleum spill up to the limits of their policies. Neither the facility owners nor the Board as subrogee sought to enforce this obligation within the applicable period of limitations.

¶28    *St. Paul* and *Fulton* are inapposite. The District Court's orders denying the Board's prayer for a separate period of limitation for each payment are correct applications of the law.

## CONCLUSION

¶29    We decline to overrule our opinion in *Capitol Indemnity*, which is consistent both with this Court's precedent and with § 27-2-102(1)(a), MCA. A separate period of limitations does not commence after each of the Board's payments. The District Court's orders granting the Insurance Companies' motions for summary judgment are affirmed.


                                                    /S/ JOHN WARNER


We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice Jim Rice, concurring.

¶30     Respondents argue that "[t]he Board's enabling legislation does not grant the Board a right of subrogation against the insurers of parties who receive reimbursement from the Fund."  For the reasons expressed in my dissenting opinion in *Montana Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, 341 Mont. 33, 174 P.3d 948, I agree with the Respondents and, viewing this as the threshold issue, would affirm the District Court on that basis.


/S/ JIM RICE