

DA 07-0297

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 195

MONTANA PETROLEUM TANK RELEASE COMPENSATION BOARD,

Plaintiff and Appellant,

v.

EMPIRE FIRE AND MARINE INSURANCE COMPANY,

Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2003-474
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

R. Allan Payne and James L. Shuler, Doney, Crowley, Bloomquist, Payne, and Uda, Helena, Montana

For Appellee:

Susan P. Roy, Garlington, Lohn & Robinson, Missoula, Montana

Submitted on Briefs:  February 6, 2008

Decided:  June 4, 2008

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Plaintiff Montana Petroleum Tank Release Compensation Board (the Board) appeals an order from the First Judicial District Court, Lewis and Clark County, granting summary judgment to Empire Fire and Marine Insurance Company (Empire) and denying the Board's motions for partial summary judgment. We affirm.

¶2 The Board raises the following issues on appeal:

¶3 1. Whether the District Court erred in holding the statute of limitations barred the Board's claim.

¶4 2. Whether the District Court erred in granting Empire's motion for summary judgment because a genuine issue of material fact existed concerning whether Empire ever denied a claim brought by its insured.

¶5 3. Whether the District Court erred when it denied the Board's motion to engage in discovery following conversion of Empire's M. R. Civ. P. 12(b)(6) motion to dismiss to a M. R. Civ. P. 56 motion for summary judgment.

¶6 Because our resolution of the first issue is dispositive, we need not discuss the other issues raised by Appellant.

BACKGROUND

¶7 The Montana Petroleum Tank Release Compensation Board is a state environmental advisory board whose purpose is to protect "the public health and safety and the environment by encouraging prompt cleanup of petroleum releases." *Safeway, Inc. v. Mont. Petroleum Release Compen. Bd.*, 281 Mont. 189, 195, 931 P.2d 1327, 1330 (1997) (citing § 75-11-301(5)(a), MCA). Among other things, the Board administers the Petroleum Tank Release

Cleanup Fund. Owners and operators of petroleum storage tanks contribute to the Fund, which, in turn, provides reimbursement for specified cleanup costs when their underground tanks leak or spill. When the Board reimburses owners or operators for their cleanup costs, it may be entitled to subrogate against any insurance carriers whose policies covered the owners or operators for spills or leaks from their petroleum storage tanks.

¶8 This is the latest in a series of cases brought by the Board seeking payment from insurance companies to reimburse it for payments it made to petroleum distributors and retailers. In each of the cases, including our opinion in *Mont. Petroleum Tank Release Compen. Bd. v. Fed. Serv.*, 2008 MT 194, ___ Mont. ___, ___ P.3d ___, Supreme Court cause number 06-0837, the Board reimbursed the owners of the facilities for the costs associated with cleanup of petroleum spills.

¶9 Between January 1, 1986, and March 27, 1991, Empire provided insurance coverage to Neil and Flora Paxson (Paxsons), who operated a gas station in Jordan doing business as "Six D's." Empire also provided coverage to the Paxsons' successor, John Currey (Currey), who owned and operated the Six D's business for one year beginning September 9, 1991.

¶10 In September, 1991, while Currey owned Six D's, he discovered that petroleum had leaked into the surrounding soil and groundwater from underground storage tanks and from surface spills during fueling operations at Six D's. Under Montana law, Currey was obligated to investigate and remediate the spills. Six D's complied and paid all necessary cleanup costs.

¶11 The Board reimbursed Six D's for its costs of the cleanup. According to the District Court, through July 11, 2006, the Board had reimbursed Six D's approximately $216,528. Pursuant to Admin. R. M. 17.58.332(5), upon payment to Six D's for cleanup costs, the Board obtained the right to seek reimbursement from Six D's insurer.

¶12 According to Empire, Currey sent a claim to them in February, 1992. According to the Board, Empire failed to act on the claim and almost a year later, on February 9, 1993, the Montana State Auditor opened a file on the case in response to a complaint of non-payment made by Currey's lawyer.

¶13 On March 5, 1993, Empire wrote two separate letters. In the first letter, addressed to the Montana Department of Insurance, Empire disclaimed coverage, stating: "We have determined that there is no coverage for the damages, fines, or costs . . . under any policy issued to the client, John Currey, d/b/a 6 Ds, Inc., . . . ." The letter was "cc-ed" to Currey's attorney. However, in the second letter addressed directly to Currey's attorney, Empire stated, "We are continuing to research our coverage, particularly under prior policies issued by this company to Mr. and Mrs. Paxson." Empire made no payment to Currey.

¶14 No more happened in reference to this claim for over nine years, until August 2002, when, according to the Board, it first learned that it was eligible for reimbursement of cleanup costs from Empire. The Board tendered a claim to Empire on August 14, 2002.

¶15 On August 6, 2003, a year after filing its demand for reimbursement against Empire, the Board filed suit. Empire denied the Board's claim a year later, on August 23, 2004.

4

¶16 The Board moved for partial summary judgment in the District Court and Empire moved to dismiss the Board's complaint pursuant to M. R. Civ. P. 12(b)(6). The District Court referred to matters outside the pleadings in considering Empire's motion to dismiss and thus treated the motion as one for summary judgment. The District Court granted Empire's motion for summary judgment and denied the Board's summary judgment motion. The Board now appeals.

STANDARD OF REVIEW

¶17 We review a district court's grant of summary judgment *de novo*, applying the same criteria as the district court pursuant to M. R. Civ. P. 56(c). *Oster v. Valley Cnty.*, 2006 MT 180, ¶ 9, 333 Mont. 76, ¶ 9, 140 P.3d 1079, ¶ 9. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c).

DISCUSSION

¶18 By virtue of Admin. R. M. 17.58.332(5), the Board is Six D's subrogee. As subrogee, the Board stands in the shoes of the subrogor. *Mont. Petroleum Tank Release Compen. Bd. v. Crumley's, Inc.*, 2008 MT 2, ¶ 61, 341 Mont. 33, ¶ 61, 174 P.3d 948, ¶ 61. Thus, the Board is subject to the same statute of limitations as Six D's. *See St. Paul Fire & Marine Ins. v. Glassing*, 269 Mont. 76, 81, 887 P.2d 218, 221 (1994) (citation omitted).

¶19 The Board argues that pursuant to footnote 4 in *Mont. Petroleum Tank Release Compen. Bd. v. Capitol Indemnity*, 2006 MT 133, 332 Mont. 352, 137 P.3d 522, the statute

5

of limitations for its indemnification claim against Empire was tolled until Empire denied the claim. Footnote 4 in *Capitol Indemnity* states:

> As a practical matter, for the insured to bring an action for payment under an insurance policy, the insurer would first need to deny payment. Thus upon the submission of a claim by the insured party, the statute of limitations is tolled until the claim is denied by the insurer.

¶20    In granting summary judgment to Empire, the District Court followed our holding in *Capitol Indemnity*, wherein we concluded that the statute of limitations for an indemnity claim by the Board began to run when the claim had accrued – e.g., when Currey discovered the leak – not when the insurer denied the claim. The basis for our holding in *Capitol Indemnity* was that if the statute of limitations did not begin to run until the insurer had denied the claim it would "effectively nullify" the purpose of a statute of limitations and the plaintiff could sue at any time in the future simply by delaying presentation of its claim. *Capitol Indemnity*, ¶ 18. This holding is affirmed in *Mont. Petroleum Tank Release Compen. Bd. v. Fed. Serv.*, 2008 MT 194, ___ Mont. ___, ___ P.3d ___, Supreme Court cause number 06-0837.

¶21    However, according to the Board, in this case the District Court was required to apply the above-quoted footnote 4 from *Capitol Indemnity*. The Board argues that footnote 4 constitutes a statement of the law to the effect that the statute of limitations was tolled because although a claim had been made against the insurer, Empire, Empire had not yet denied it. We disagree.

¶22 Footnote 4 constitutes *obiter dicta*. Such dicta is not persuasive authority for deciding an issue before this Court. *State v. Marble*, 2005 MT 208, ¶ 26, 328 Mont. 223, ¶ 26, 119 P.3d 88, ¶ 26. Indeed, footnote 4 conflicts with the holding of *Capitol Indemnity*--that the statute of limitations for an indemnification claim begins to run from the time the actual claim accrues. The Board asks us to apply dicta from a footnote which directly conflicts with the actual holding of the case. This we decline to do.

¶23 The Board argues that if a period of limitations commences when a claim accrues and the limitations period is not tolled during the time between when a claim is made and when it is denied, insurers would be encouraged to drag out claims as long as possible until the period of limitations expires, thereby preventing a prospective plaintiff from filing suit. However, the Board cites no authority which says that an insured may not file suit until a claim is denied. Control over when to commence an action to recover under an insurance policy is in the hands of the insured, who may file a complaint at virtually any time within the requisite period of limitations. In the event an insurer attempts to prolong the claim review process, the onus is on the insured to file a complaint before the statute of limitations runs.

¶24 The District Court correctly applied our holding in *Capitol Indemnity* that the period of limitations began when the claim accrued. Thus, the Board's complaint, which was filed in August, 2003--almost 12 years after Currey discovered the leak and the claim accrued-- was barred by the eight-year statute of limitations for a contract action. Because this issue is dispositive, we need not reach the other issues the Board raises.

¶25    Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS